Catron, J.
deliyered the opinion of the court.
The first question is, was the note declared upon, a property contract? We clearly think that the contract was for cotton, and in the ordinary form of most securities for property.
The next and material question is, was the note a negotiable paper, and the assignor, Gwin, liable to the assignee, Lawrence? To ascertain the nature of a negotiable contract, we must" refer to the bills of exchange, which are in fact orders for money.. A has $1000, the money of B, in his hands, who draws an order or bill on A, directing him to pay the money to C. Mercantile usage, long since, has established, that if C presents the bill or order to A, and he fails to pay it, B, on being notified, is bound to pay instead of A. Such bills have long since passed instead of cash, and as cash, in mercantile countries, for which bank notes have been substituted to a great extent. All this is drawing upon a deposited fund, and the bill or bank note is the representative of the cash.
A note of hand is an acknowledgment by the holder of the fund to the maker, that the cash is in his hands and will be paid to the payee, or his order. When the latter endorses the note, he orders the maker to pay the money to the endorsee: Hence, the endorsement is a bill or order, and the note with the endorsements has the features and legal effect of an accepted bill. Negotiable paper, by the law merchant, and by our statutes, includes orders or bills of exchange, checks on banks, bank notes and notes of hand, with or without seal, but all for money, which they represent for the convenience of commerce, because of the weight and bulk of sp.ecie and the *437 facilities of transmission. Every one passing off such. paper, is presumed to have exchanged his for actual cash; hence, the name of “hill of exchange” was given to a single order to pay money, and he who draws the order is bound to refund the money obtained for it, if the drawee does not pay. But suppose an order drawn for five hundred bales of cotton, what does it represent? Cotton. Suppose the order was not paid by the drawee and the drawer notified, what is he to pay? Cotton. The idea of commercial exchange has never been, nor can p; with any propriety, be applied to property other thaiji money. I exchange you cash here, for your cash in Philadelphia, or London, is sensible; but that I exchange you cotton, houses, land, or corn, here, for the same quantity and description of property in Philadelphia,-or London, in commerce, would be absurd, and forms no part of the definition of the term negotiability, which imports exchange of cash. Upon such paper has commercial usage rendered the endorser liable, by implication, without a special contract, and to subject to this usage certain contracts not previously included, were the acts of 1762 and 17S6 passed.
If the endorser, upon a property contract, is bound to pay on default of the maker, his liability arises upon the act of 1801, ch. 6, sec.'54. That the endorser was not liable, by form of the statute, was decided twenty years ago, in the case of Looney vs. Pinkston, (1 Ten. Rep. 384,) which decision we feel it our duty and inclination not to disturb. The case of Childress vs. Stewart, (in Peck’s Rep. 276,) arose upon a note payable in bank notes, which form the current cash of every commercial country. Such notes have been treated as negotiable in England and New York, and no reason is seen why the rule should not be applied in this State. We, therefore, do not apprehend the decision in the latter case to conflict with the former.
For the character which commercial usage has given to *438 bank notes, we refer to Chitty on Bills, 425-6, Am. Ed./of 1821. We do not apprehend the endorsement 0f Gwin a special contract to pay on default of the maker; to do so, would be to conjecture that which the parties have not expressed. Its import, as far as expressed, is, that Gwin will interpose no impediment to the collection of the note by Lawrence from Dougherty. By the act of 1820, ch. 25, sec. 2, Lawrence was clearly entitled to recover against Dougherty, although Gwin was discharged.
We decided at Nashville in 1826, that debt would lie upon a contract of this kind. That was for $100, which might'be discharged in horses, at cash valuation. We refer to that opinion for the reasons of the decision.
Judgment reversed, and entered against Dougherty, and Gwin discharged with costs.
Judgment reversed.